UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**JONATHAN F. STARBUCK,**

    **Plaintiff,**

    v.                                                                   ACTION NO. 4:18cv63

**WILLIAMSBURG JAMES CITY
COUNTY SCHOOL BOARD,**

    **Defendant.**

## DISMISSAL ORDER

In this action, Plaintiff Jonathan F. Starbuck ("Plaintiff"), appearing *pro se*, alleges that his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution were violated when he was a student at Jamestown High School in Williamsburg, Virginia. *See generally* Am. Compl., ECF No. 20. This matter is before the Court on an Amended Motion to Dismiss filed by Defendant Williamsburg James City County School Board (the "School Board"). Am. Mot. Dismiss, ECF No. 36. The Court determines that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs. For the reasons set forth below, the School Board's Amended Motion to Dismiss, ECF No. 36, is **GRANTED**.

### I. Relevant Background

On May 30, 2018, Plaintiff's brother initiated this *pro se* action on behalf of Plaintiff, who was a minor at the time of filing. On September 10, 2018, the Court dismissed this action without prejudice after it determined that (i) Plaintiff's brother, who is not a licensed attorney, could not represent the interests of another on a *pro se* basis; and (ii) the appointment of counsel

was unwarranted. Dismissal Order at 1-11, ECF No. 8. Plaintiff's brother appealed the dismissal of this action to the United States Court of Appeals for the Fourth Circuit. Notice Appeal, ECF No. 10. During the pendency of the appeal, Plaintiff reached the age of majority. As a result, the Fourth Circuit granted a "motion to dismiss the appeal as moot," and remanded the case to this Court to allow Plaintiff to proceed with this action on his own behalf. Order at 1-2, ECF No. 19 (summarizing the procedural history of this matter).

On remand, Plaintiff filed an application to proceed *in forma pauperis* ("IFP Application"), along with a proposed Amended Complaint. IFP Appl., ECF No. 18; Proposed Am. Compl., ECF No. 18-1. On November 25, 2019, the Court granted Plaintiff's IFP Application, and directed the Clerk to file Plaintiff's Amended Complaint. Order at 2, ECF No. 19; Am. Compl., ECF No. 20.

On March 19, 2020, the School Board filed an Amended Motion to Dismiss,[1] and provided *pro se* Plaintiff with a proper *Roseboro* Notice pursuant to Rule 7(K) of the Local Civil Rules of the United States District Court for the Eastern District of Virginia. Am. Mot. Dismiss at 1-2, ECF No. 36; E.D. Va. Loc. Civ. R. 7(K). Plaintiff filed an Opposition to the School Board's motion, and the School Board filed a Reply. Opp'n, ECF No. 38; Reply, ECF No. 39. Accordingly, the School Board's Amended Motion to Dismiss is ripe for adjudication.

## II. Plaintiff's Amended Complaint

Plaintiff's Amended Complaint begins with a brief summary of the shooting that occurred at a high school in Parkland, Florida in 2018. Am. Compl. at 1, ECF No. 20. Plaintiff states: "On February 14, 2018, in Parkland, Florida, a high school student went to school and killed seventeen of his classmates with a firearm. The following day, due to the scale of this tragedy,

---

[1] The School Board filed an initial Motion to Dismiss on January 24, 2020; however, in its supporting memorandum, the School Board mistakenly identified Plaintiff's brother as the "Plaintiff" in this action. Mem. Supp. Mot. Dismiss at 1, ECF No. 26. As a result, the Court ordered the School Board to file an Amended Motion to Dismiss, and dismissed the School Board's initial Motion to Dismiss as moot. Order at 2-3, ECF No. 35.

discussion about the incident was widespread. Jamestown High School, and Williamsburg, Virginia, were no exception." *Id*.

Plaintiff alleges that on February 15, 2018, the day after the Parkland shooting, Plaintiff and other students were "engaged in a proactive conversation," in which they "discuss[ed] the prevention and basis of these tragedies." *Id*. at 1, 5. Plaintiff alleges that during the conversation, Plaintiff "made remarks questioning the intent of the shooter, stating that the shooter would be capable of more harm had he wanted to." *Id*. at 5. Specifically, Plaintiff noted that the shooter possessed explosives, and "was left alone within the building unchallenged by local law enforcement." *Id*. Plaintiff also noted the shooter's "use of the fire alarm to lure students out." *Id*. at 2. Plaintiff alleges that "[n]o student within the conversation made any threat, but were discussing observations and real world, practical problems." *Id*. at 1-2.

Plaintiff further alleges that a teacher overheard Plaintiff's remarks, and "reported the remarks to [t]he [s]chool administration and local police." *Id*. at 5. Plaintiff alleges that a school police officer "investigated and cleared the report as unfounded" because "he believed there was no threat made and no criminal offense under the Code of Virginia." *Id*. at 6. Nevertheless, Plaintiff alleges that he "was removed from class and forced to remain in seclusion (in-school suspension) . . . for 'his safety,' without notification of his parent, for the remainder of the academic day, without being informed of the reasons for which he was there."[2] *Id*. During his in-school suspension, which lasted "three attendance periods," Plaintiff alleges that he "was subjected to multiple interrogations by school officials, to include psychologists, service

---

[2] In his Amended Complaint, Plaintiff refers to his removal from class on February 15, 2018, as an "in-school suspension." Am. Compl. at 6-7, ECF No. 20. Despite this reference, Plaintiff appears to allege that he was unaware that the removal was characterized as an "in-school suspension" until several months later, when he obtained his attendance records. *Id*. at 9.

3

counselors, and principals." *Id*. at 6, 9. Plaintiff was "released to return home" at the "normal dismissal time." *Id*. at 6.

Plaintiff alleges that at 5:30 p.m. on the day of the incident, "the suspending assistant principal, Mr. Howard Townsend," contacted Plaintiff's parent, and explained that Plaintiff would be subject to an "out-of-school suspension . . . for the following two days." *Id*. Plaintiff alleges that "[w]hen questioned about the [i]n-[s]chool [s]uspension" that occurred earlier that day, Mr. Townsend stated that the in-school suspension was imposed for Plaintiff's "own safety," "out of concern for 'retaliation from other students.'" *Id*. at 7.

Plaintiff alleges that Mr. Townsend "scheduled a meeting the following Tuesday to discuss protection plans for [Plaintiff] in the event any retaliation occurred." *Id*. The meeting was attended by Mr. Townsend, a hearing officer, a member of the School Board, a guidance counselor, Plaintiff, Plaintiff's brother, and Plaintiff's mother. *Id*. Plaintiff alleges that during the meeting, "it was clarified that . . . [Plaintiff's] actions were not cause for any action to be taken," and that Plaintiff intended to appeal the suspension decision upon receipt of a written "Notice of Suspension." *Id*.

Plaintiff alleges that a "formal . . . Notice of Suspension was received" on February 26, 2018. *Id*. at 8. Plaintiff alleges that the Notice of Suspension only referenced Plaintiff's out-of-school suspension, and made no mention of an in-school suspension.[3] *Id*. at 9. Plaintiff alleges that a "written notice of appeal" was personally delivered to the office of the School Board on February 27, 2018. *Id*. at 8. Plaintiff states that although the School Board has "no explicit policy for reviewing a short term suspension," "[t]he School Board's internal policy grants them thirty days to acknowledge and close all long term suspensions." *Id*. Plaintiff alleges that the

---

[3] Plaintiff claims that "[n]o written notice" was ever provided to Plaintiff or his parent regarding the in-school suspension. Am. Compl. at 9, ECF No. 20.

4

School Board did not respond to his notice of appeal until May 2018. *Id*. In its response, the School Board (i) "found the suspension was proper;" but (ii) recharacterized the reason for the suspension as a "[c]lassroom [d]isturbance." *Id*. Plaintiff claims that "he was never afforded the opportunity to dispute" the recharacterization of his suspension. *Id*.

Plaintiff claims that the actions of the School Board, as detailed above, violated Plaintiff's rights under the First, Fifth, and Fourteenth Amendments. *Id*. at 4, 9-12. Specifically, Plaintiff claims that the School Board's "decision for suspension infringed upon [P]laintiff's Right of Free Speech, as protected by the First Amendment" because "none of [Plaintiff's] remarks created any disturbance, put any[one] in imminent danger, or acted as the catalyst [for] any criminal violations." *Id*. at 9-10. Additionally, Plaintiff claims that the School Board's decision to recharacterize Plaintiff's suspension as a "[c]lassroom [d]isturbance," without providing Plaintiff with an opportunity to dispute the recharacterization, violated Plaintiff's rights under the Fifth and Fourteenth Amendments.[4] *Id*. at 8-9, 12. Finally, Plaintiff claims that the School Board violated his due process rights under the Fourteenth Amendment by (i) arbitrarily suspending Plaintiff "without considering the context of [Plaintiff's] statements;" (ii) failing to provide adequate notice of Plaintiff's in-school suspension; (iii) failing to provide Plaintiff with "the formal written Notice of Suspension within a reasonable time;" (iv) failing "to respond to the timely filed appeal" of Plaintiff's suspension; and (v) failing to "properly provide [Plaintiff] with the charges [for] which he was being secluded . . . (in-school suspension), and allow him an opportunity to refute those allegations and face [the] accusations." *Id*. at 9-11.

---

[4] Plaintiff alleges that the School Board has "a policy . . . which allows them to investigate an offense, have an informal meeting with the offending student, to allow them to present their version of the facts, and then continue to investigate, and allow that new evidence found under the second scope of the investigation into the decision process for disciplinary actions, contrary to the 14th Amendment of the United States." Am. Compl. at 3, ECF No. 20.

5

### III. The School Board's Amended Motion to Dismiss

#### A. Standard of Review Under Federal Rule 12(b)(6)

The School Board seeks dismissal of this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under Federal Rule 12(b)(6) should be granted if a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A Rule 12(b)(6) motion "tests the sufficiency of a complaint and 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 567 (E.D. Va. 2009) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). As such, the Court must accept all factual allegations contained in Plaintiff's Amended Complaint as true and draw all reasonable inferences in favor of Plaintiff. *Id*. "Although the truth of the facts alleged is assumed, courts are not bound by the 'legal conclusions drawn from the facts' and 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Id*. (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "in cases where the plaintiff appears *pro se*, courts do not expect the *pro se* plaintiff to frame legal issues with the clarity and precision expected from lawyers." *Suggs v. M&T Bank*, 230 F. Supp. 3d 458, 461 (E.D. Va. 2017). In such cases, courts are required to construe the operative complaint liberally.[5] *Id*.

---

[5] In his Opposition, Plaintiff argues that the School Board's Amended Motion to Dismiss fails to accurately summarize the factual allegations of Plaintiff's Amended Complaint. Opp'n at 3-4, ECF No. 38. Plaintiff argues that the School Board included statements in its motion that are "factually untrue," and "carefully omit[te]d" certain factual allegations that were asserted in

B.  **Discussion**

When an individual believes that he or she "ha[s] been deprived of federal rights under color of state law," the individual may assert a claim under 42 U.S.C. § 1983. *Riddick v. Sch. Bd.*, 238 F.3d 518, 521 n.2 (4th Cir. 2000). Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.[6] In this action, Plaintiff alleges that the School Board violated his rights under the First, Fifth, and Fourteenth Amendments. Am. Compl. at 1-13, ECF No. 20. Therefore, although Plaintiff does not specifically refer to § 1983 in his Amended Complaint, it is clear that Plaintiff brings this action pursuant to § 1983.

It is well established that § 1983 liability is personal in nature, and the doctrine of respondeat superior is generally inapplicable to actions brought under the statute. *Monell v.*

---

the Amended Complaint. *Id*. at 4. Plaintiff claims that the School Board's motion "rewrite[s] the plain face" of the Amended Complaint, and in essence, asks the Court to consider "matters outside the pleadings." *Id*. at 3-4. Therefore, Plaintiff argues that the Court must treat the School Board's Amended Motion to Dismiss as a Motion for Summary Judgment. *Id*.; *see* Fed. R. Civ. P. 12(d) (stating that "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"). The Court finds that although Plaintiff challenges the accuracy of the School Board's summary of the factual allegations of Plaintiff's Amended Complaint, the School Board's summary does not constitute "matters outside the pleadings" for purposes of Federal Rule 12(d). Additionally, the Court notes that it has conducted an independent analysis of Plaintiff's Amended Complaint, and has resolved the School Board's motion based solely on the factual allegations asserted therein. Accordingly, the Court need not – and does not – treat the School Board's Amended Motion to Dismiss as a Motion for Summary Judgment.

[6] As this Court has explained, § 1983 "is a vehicle for the vindication of pre-existing federal rights rather than an independent source of substantive rights." *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 529 (E.D. Va. 2015).

*Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *J.S. v. Isle of Wight Cty. Sch. Bd.*, 368 F. Supp. 2d 522, 526 (E.D. Va. 2005). "In order to state a § 1983 claim against a municipality,[7] or a subdivision thereof, a plaintiff must plead 'the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights.'" *J.S.*, 368 F. Supp. 2d at 526 (quoting *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994)). Under this legal framework, a plaintiff's allegations that a school board violated his or her constitutional rights are alone insufficient to impose liability on a school board. Instead, a plaintiff must allege that a school board maintains a policy or practice that resulted in the alleged constitutional violations. *See Lucas v. Henrico Cty. Pub. Sch. Bd.*, No. 3:18cv402, 2019 U.S. Dist. LEXIS 193385, at *8-10 (E.D. Va. Nov. 6, 2019) (dismissing § 1983 claims against a school board because the plaintiffs failed to sufficiently allege that the school board "implemented and executed an unlawful policy or custom that was responsible for [the] [p]laintiffs' alleged deprivation of constitutional rights"); *Collins v. Prince William Cty. Pub. Schs.*, No. 1:03cv1455, 2004 U.S. Dist. LEXIS 28298, at *34-35 (E.D. Va. Apr. 24, 2004) (noting that a school board cannot be held liable under § 1983 for a disciplinary decision that is an "episodic exercise of discretion in the operational details of government," and that a plaintiff must allege "a policy made by the [s]chool [b]oard which results in a constitutional deprivation").

Notably, courts have explained that a plaintiff cannot allege, in a conclusory fashion, that a school board maintains a policy or practice that resulted in an alleged constitutional violation. *RM v. Charlotte-Mecklenburg Cty. Bd. of Educ.*, No. 3:16cv528, 2017 U.S. Dist. LEXIS 73582, at *16-17 (W.D.N.C. May 15, 2017). Instead, such allegations must be factually supported. *Id.*

---

[7] For purposes of claims brought pursuant to § 1983, the Fourth Circuit "has treated Virginia school boards as 'municipalities.'" *Ashby v. Isle of Wight Cty. Sch. Bd.*, 354 F. Supp. 2d 616, 625 (E.D. Va. 2004) (citing *Riddick v. Sch. Bd.*, 238 F.3d 518, 522-523 (4th Cir. 2000)); *Hughes v. Halifax Cty. Sch. Bd.*, 855 F.2d 183, 185 (4th Cir. 1988)).

(citing *Twombly*, 550 U.S. at 555-57) (dismissing a § 1983 claim against a school board, and finding that the plaintiffs "failed to provide any factual allegations to support their claim that the [school board] implemented a policy that caused the alleged deprivation of the [p]laintiffs' Fifth and Fourteenth Amendment rights").

In the Amended Complaint in this action, Plaintiff refers to two alleged policies of the School Board. Am. Compl. at 3, 8, 11-12. First, Plaintiff alleges that the School Board has "a policy . . . which allows them to investigate an offense, have an informal meeting with the offending student, to allow them to present their version of the facts, and then continue to investigate, and allow that new evidence found under the second scope of the investigation into the decision process for disciplinary actions."[8] *Id*. at 3. Plaintiff also alleges that the School Board has an "internal policy" that "grants them thirty days to acknowledge and close all appeals of **long term suspensions**." *Id*. at 8 (emphasis added). However, as summarized above, Plaintiff's suspension lasted less than three days (*i.e.*, an in-school suspension for "three attendance periods," and an out-of-school suspension for two days), and Plaintiff specifically alleges that the School Board has "no explicit policy for reviewing a **short term suspension**." *Id*. at 6, 8-9 (emphasis added).

In its Amended Motion to Dismiss, the School Board argues, among other things, that this action should be dismissed under Federal Rule 12(b)(6) because "Plaintiff has not pled sufficient facts to plausibly assert municipal liability" against the School Board under § 1983. Mem. Supp. Am. Mot. Dismiss at 5, ECF No. 37. The School Board argues that Plaintiff's Amended Complaint does not contain sufficient factual allegations to establish a specific policy or

---

[8] Plaintiff appears to restate this alleged policy on pages 11-12 of his Amended Complaint, whereby Plaintiff alleges: "The [School Board's] policies as stated in the Student Code of Conduct, act as a permission to the [School] Board and its schools to violate the rights of students by permitting 'further investigation' after the student is faced with his allegations and offered a chance to explain his version of the facts in the matter." Am. Compl. at 11-12, ECF No. 20.

9

widespread custom that violated Plaintiff's constitutional rights. *Id.* at 4-7. The School Board further argues that the underlying constitutional claims fail to state plausible claims for relief. *Id.* at 7-14. The Court will address each constitutional claim asserted by Plaintiff in turn.

1. **First Amendment Claim**

Plaintiff claims that the School Board violated his right to free speech under the First Amendment because Plaintiff was disciplined for remarks that did not "create[] any disturbance, put any[one] in imminent danger, or act[] as the catalyst [for] any criminal violations." Am. Compl. at 9-10. However, Plaintiff does not allege that any official policy or custom of the School Board proximately caused the alleged violation of his First Amendment rights. *Id.* at 1-13. The only alleged policies and customs referenced in Plaintiff's Amended Complaint, as summarized above, are entirely unrelated to Plaintiff's First Amendment claim. *Id.* at 3, 8, 11-12. There is no suggestion in Plaintiff's Amended Complaint that Plaintiff's in-school or out-of-school suspension was the result of a School Board policy or custom that restricts student speech in any manner. Without such allegations, Plaintiff cannot maintain a First Amendment claim against the School Board under § 1983. *See J.S.*, 368 F. Supp. 2d at 526 (dismissing a plaintiff's claim against a school board because the plaintiff failed to allege an official municipal policy that violated his constitutional rights). Accordingly, the School Board's Amended Motion to Dismiss is **GRANTED** as to Plaintiff's First Amendment claim.

2. **Fourteenth Amendment Claim**

Plaintiff claims that the School Board violated his due process rights under the Fourteenth Amendment. Am. Compl. at 9-12. To survive the School Board's Amended Motion to Dismiss, Plaintiff must show, among other things, that he adequately alleged that the School Board maintains a policy or custom that proximately caused the deprivation of Plaintiff's Fourteenth Amendment rights. *See J.S.*, 368 F. Supp. 2d at 526.

10

In his Amended Complaint, Plaintiff refers to a School Board policy that applies to long term suspensions. Am. Compl. at 8 (alleging that "[t]he School Board's internal policy grants them thirty days to acknowledge and close all appeals of long term suspensions"). However, as discussed above, Plaintiff's suspension lasted less than three days (*i.e.*, an in-school suspension for "three attendance periods," and an out-of-school suspension for two days). *Id*. at 6, 9. As such, the School Board's policy regarding long term suspensions does not apply to Plaintiff's Fourteenth Amendment claim. Notably, Plaintiff specifically alleges that the School Board has "no explicit policy for reviewing a short term suspension." *Id*. at 8.

Plaintiff's Amended Complaint contains one other reference to an alleged School Board policy. *Id*. at 3, 11-12. Plaintiff alleges:

> It is a policy of the School Board of Williamsburg – James City County, under their Code of Conduct, which allows them to investigate an offense, have an informal meeting with the offending student, to allow them to present their version of the facts, and then continue to investigate, and allow that new evidence found under the second scope of the investigation into the decision process for disciplinary actions.[9]

*Id*. at 3.

The Court finds that Plaintiff's allegations regarding this "continued investigation" policy of the School Board are conclusory in nature, and factually unsupported. *See RM*, 2017 U.S. Dist. LEXIS 73582, at *16-17 (citing *Twombly*, 550 U.S. at 555-57) (explaining that conclusory allegations of a school board policy without additional supporting facts are insufficient to state a § 1983 claim).

---

[9] As noted above, Plaintiff appears to restate this alleged policy on pages 11-12 of his Amended Complaint, whereby Plaintiff alleges: "The [School Board's] policies as stated in the Student Code of Conduct, act as a permission to the [School] Board and its schools to violate the rights of students by permitting 'further investigation' after the student is faced with his allegations and offered a chance to explain his version of the facts in the matter." Am. Compl. at 11-12, ECF No. 20.

Assuming, for the sake of argument, that Plaintiff alleged sufficient facts to support the existence of this policy, the Court finds that such policy would not proximately cause the deprivation of Plaintiff's Fourteenth Amendment rights. It is well settled that "[s]tudents facing temporary suspension have interests qualifying for protection of the Due Process Clause" of the Fourteenth Amendment. *Goss v. Lopez*, 419 U.S. 565, 581 (1975). However, as the United States Supreme Court has explained, if a student is facing a "suspension of 10 days or less," the student need only be given "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id*. This requirement, described as a "notice and rudimentary hearing" or an "informal give-and-take between student and disciplinarian," constitutes sufficient due process under the Fourteenth Amendment when conducted "as soon as practicable" after the alleged misconduct occurs. *Id*. at 581-84.

The United States Supreme Court has further explained that due process, in the context of "short suspensions," does not require the student to receive a hearing with "the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Id*. at 583. Because "[b]rief disciplinary suspensions are almost countless," such a requirement "might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness." *Id*.

Under this legal framework, the Court finds that the School Board policy alleged by Plaintiff, which allows the School Board to "investigate an offense, have an informal meeting with the offending student . . . to allow them to present their version of the facts, and then continue to investigate, and allow that new evidence found under the second scope of the investigation into the decision process for disciplinary actions," would not violate the due

12

process rights of a student, such as Plaintiff, who faced a suspension of less than ten days. Am. Compl. at 3.

In his Opposition, Plaintiff appears to argue, for the first time, that the School Board has a policy or custom whereby students are subjected to an in-school suspension "for their own safety," without being advised of any intent to discipline. Opp'n at 5-6, ECF No. 38. Plaintiff argues:

> [Plaintiff] was told he was "held in [in-school suspension] for his safety." Schools within the Williamsburg – James City County School Board have frequently, and on a continuingly more frequent basis have begun to use this excuse. This is strictly an omission, wherein the intent is to provide discipline, but not tell the party they are subject to discipline. This is materially a custom that is allowed by policy, be it the Code of Conduct, as will be shown in the discovery and trial phase of this action, and so well known by the administrators, that the common high school student does not know well enough to argue or challenge it.

*Id*. Plaintiff further argues:

> The School Board of WJCC has a specific seclusion policy as outlined in the Student Code of Conduct (the Board also has a policy manual that it only makes available for instructors and administrators), for when students may be placed in an in-school suspension. None of these allow for students to be placed "for their own safety."

*Id*. at 6.

In response to the arguments asserted by Plaintiff in his Opposition, the School Board argues:

> Plaintiff seems to argue that an in-school suspension for his "own safety" is an omission that is sufficient to hold the School Board liable under the *Monell* [d]octrine. Furthermore, Plaintiff asserts in conclusory fashion that holding students in in-school suspension for "their own safety" is a widespread custom subjecting the School Board to be held liable under the *Monell* doctrine. Yet, this "wide-spread" practice was also not alleged in Plaintiff's Amended Complaint, nor were there facts alleged . . . in the Amended Complaint to support this theory.

Reply at 3, ECF No. 39.

13

As an initial matter, it is well-settled that "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004). As such, in ruling on the School Board's Amended Motion to Dismiss, the Court is only required to consider the factual allegations asserted in Plaintiff's Amended Complaint. Upon review of Plaintiff's Amended Complaint, the Court finds that although Plaintiff appears to allege therein that he was removed from class on February 15, 2018, "for his safety," without being advised of the disciplinary nature of the removal, Plaintiff does not allege in his Amended Complaint that such action was taken pursuant to an official policy or custom of the School Board.

For all of the reasons discussed above, the Court finds that Plaintiff's Amended Complaint does not identify a policy or custom of the School Board that proximately caused any deprivation of Plaintiff's Fourteenth Amendment rights. Accordingly, the School Board's Amended Motion to Dismiss is **GRANTED** as to Plaintiff's Fourteenth Amendment claim.

### 3. Fifth Amendment Claim

In his Amended Complaint, Plaintiff claims that the School Board violated his Fifth Amendment rights by recharacterizing Plaintiff's suspension as a classroom disturbance, without providing Plaintiff with an opportunity to dispute the recharacterization. Am. Compl. at 8-9, 11. The Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

The School Board argues that Plaintiff's Fifth Amendment claim cannot survive a challenge under Federal Rule 12(b)(6) for several reasons. To the extent Plaintiff intended to base his Fifth Amendment claim on the Due Process Clause of the Fifth Amendment, the School Board argues that the Due Process Clause of the Fifth Amendment only applies to federal actors. Mem. Supp. Am. Mot. Dismiss at 13-14 (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2001); *Key v. Robertson*, 626 F. Supp. 2d 566, 579 (E.D. Va. 2009); *Freilich v. Bd. of Dirs. of Upper Chesapeake Health, Inc.*, 142 F. Supp. 2d 679, 691-92 (D. Md. 2001)). To the extent Plaintiff intended to base his Fifth Amendment claim on the Double Jeopardy Clause or the Self-Incrimination Clause of the Fifth Amendment, the School Board argues that such clauses are only implicated in criminal proceedings. *Id*. at 14 n.4 (citing *Wofford v. Evans*, 390 F.3d 318, 322 n.1 (4th Cir. 2004)); Reply at 7, ECF No. 39 (citing *Benton v. Maryland*, 395 U.S. 784, 795 (1969)).

The School Board's arguments comport with the law. The Due Process Clause of the Fifth Amendment applies only to the federal government. *Holley v. Frey*, No. 1:17cv176, 2018 U.S. Dist. LEXIS 120915, at *8 (E.D. Va. July 16, 2018) (dismissing a *pro se* plaintiff's Fifth Amendment claims because "defendants [we]re not employees or agents of the federal government"). Additionally, the Self-Incrimination Clause of the Fifth Amendment applies only in criminal cases. *See* U.S. Const. amend. V (stating that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself"). Finally, courts have explained that "the Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for the same offense," and "does not apply to academic disciplinary proceedings."[10] *Hudson v.*

---

[10] The Court notes that in his Opposition, Plaintiff cites to *Benton v. Maryland*, 395 U.S. 784 (1969), for the proposition that the Double Jeopardy Clause of the Fifth Amendment "is enforceable against the States. . . ." Opp'n at 14, ECF No. 38 (quoting *Benton*, 395 U.S. at 784). However, in quoting *Benton*, Plaintiff omitted language that indicates that the Double Jeopardy

15

*United States*, 522 U.S. 93, 98-99 (1997); *Doe v. Univ. of South Carolina*, No. 3:18-161, 2018 U.S. Dist. LEXIS 38108, at *17 n.10 (D.S.C. Feb. 12, 2018). Therefore, the Court finds that Plaintiff cannot state a plausible claim for relief against the School Board under the Due Process Clause, the Double Jeopardy Clause, or the Self-Incrimination Clause of the Fifth Amendment. Accordingly, the School Board's Amended Motion to Dismiss is **GRANTED** as to Plaintiff's Fifth Amendment claim.

### IV. Conclusion

For the reasons set forth above, the School Board's Amended Motion to Dismiss, ECF No. 36, is **GRANTED**.

Plaintiff may appeal this Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, Newport News Division, 2400 West Avenue, Newport News, Virginia 23607. The written notice must be received by the Clerk within thirty days from the date of entry of this Dismissal Order.

The Clerk is **DIRECTED** to send a copy of this Dismissal Order to Plaintiff and counsel for the School Board.

IT IS SO **ORDERED**.

/s/ *[signature]*
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

November    20    , 2020

---

Clause of the Fifth Amendment "is enforceable against the States **through the Fourteenth Amendment**." *Benton* 395 U.S. at 784 (emphasis added). Nevertheless, regardless of whether Plaintiff bases his Double Jeopardy claim on the Fifth Amendment or the Fourteenth Amendment, such claim necessarily fails because, as set forth herein, the Double Jeopardy Clause applies to criminal proceedings, as opposed to academic disciplinary proceedings. *Hudson v. United States*, 522 U.S. 93, 98-99 (1997); *Doe v. Univ. of South Carolina*, No. 3:18-161, 2018 U.S. Dist. LEXIS 38108, at *17 n.10 (D.S.C. Feb. 12, 2018).